PATRICK H. KEENAN *vs.* EDISON ELECTRIC ILLUMINATING COMPANY.

Suffolk. May 29, 1893. — June 21, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & BARKER, JJ.

*Personal Injuries — Unprotected Elevator — Negligence — Action.*

A laborer, whose duty it was to take a car loaded with coal in an elevator from the lower floor to the roof of a building, push the car a short distance along a track on the roof, dump its contents, push it back, and take it down on the elevator,

after the car had been dumped pushed it back into the elevator shaft, supposing the elevator to be there, but the elevator had gone down, and he fell into the shaft and was injured. The shaft was not provided with an automatic guard, as required by statute. The man had done the same work for several weeks, and knew that the elevator shaft was not protected. *Held*, that he could not maintain an action against his employer for the injury.

TORT, for personal injuries occasioned to the plaintiff, on January 22, 1891, by falling into an elevator shaft, while in the defendant's employ. Trial in the Superior Court, before *Dunbar*, J., who allowed a bill of exceptions, in substance as follows.

Patrick Costello testified that he was one of the inspectors of the city of Boston, whose duty it was to inspect buildings in that city, and to perform the duties imposed upon them by the statutes; that he, with another inspector, was intrusted with the duty of inspecting elevators, hatchways, and hoistways; that he inspected the elevator and connections upon which the injury to the plaintiff was received on January 19, 1891, and the elevator had not been inspected prior to that time; that at that time there were no such automatic guards upon the elevator as are required by the statutes; that he was not sure whether there were any guards at all; that, on January 23, 1891, he notified the defendant of their absence, in writing, directing that they should be provided; that the elevator was an electric elevator, and was directly connected with the electric motor; that he could not recollect whether he had received any notice that a new elevator had been put in before the elevator was first used; that, if such notice had been received, the board of inspectors would have inspected the elevator within a day or two after having received it; that the elevator was a new one, and was entirely complete, except that it had no guards; and that the elevator was put in in November, 1890. On cross-examination, he testified that, in his opinion, there was no danger to a careful man; and that the well was perfectly light, and there was plenty of light to work by.

The plaintiff testified that he had been at work on the elevator eight or nine weeks; that he was doing the same work all the time from seven o'clock in the morning until sometimes seven o'clock in the evening, using the same elevator and car all the time, and the elevator was in the same condition all that time; that his duty was to fill, at the lower floor, a coal car

which ran upon a track to and in the elevator car, and that track connected with a similar track upon the roof of the building; that he then caused the elevator to ascend by pulling the rope or wire running beside the elevator car, stopped it at the top floor, or roof, pushed the coal car off, weighed it, noted the weight upon a slate, pushed the car forty or fifty feet along the track to a chute, dumped it, pushed it back, took it down upon the elevator, and repeated the process every few minutes during the day; that the coal car was of iron, about four and a half feet high, and larger at the top than at the bottom, and weighed about one thousand pounds; that the total weight of the car when loaded with coal was about two thousand pounds; that the elevator car consisted of a platform connected with the lifting ropes by side supports connected with a cross-piece at the top, and was provided with no railing or enclosure; that the elevator shaft extended above the roof, forming a tower with a skylight in the top, and was built of brickwork open on one of the sides to form a doorway just large enough for the coal car to pass through; that on January 22, 1891, he loaded the coal car at the lower floor, got on top of it, as was his custom, pulled the rope, the elevator rose, he stopped it at the roof floor, pushed the coal car off upon the scales about nine or ten feet distant, weighed it, returned to the elevator, marked down the weight on the slate which hung there, let down the car, which had sprung up two or three inches upon being relieved of the weight of the coal car, to the level of the roof floor, waited two or three minutes inside the elevator because it was raining outside, then went out, pushed the coal car to the chute, dumped it, and pushed it back into the elevator shaft, supposing the elevator car to be still there; that the elevator car was not there, but had gone down, in some way and for some reason to him unknown, so that, instead of pushing his coal car on to the elevator, he pushed it into the shaft, and, losing his balance, fell in after it, and down one or two stories, and received the injuries complained of; that he pushed the coal car because that was the only way in which he could propel it; that there were no handles on the car; that he had to stoop over, pressing both hands against the top of the car when pushing it; that he was five feet and seven inches in height, and, from his position behind the coal car, he could see no part of the elevator car; that

before he started from the dumping place he could have walked around the coal car and looked towards the elevator; that the track upon which the coal car ran sloped several inches downward from the elevator to the chute; that there were no automatic guards, or guards of any kind, at the opening of the elevator well at the roof, or on any of the other floors; that if there had been he could not have fallen into the shaft; that the time which elapsed from his leaving the elevator after writing on the slate until he fell into the shaft was not over three minutes; and that he knew there were no gates of any kind on the elevator, but had never reported that fact to any one.

Upon the conclusion of the plaintiff's evidence, the defendant asked the judge to rule that the plaintiff had not shown a sufficient cause of action, and to order a verdict for the defendant. The judge ruled as requested, and directed the jury to return a verdict for the defendant; and the plaintiff alleged exceptions.

*G. W. Pearson*, for the plaintiff.

*S. H. Smith*, for the defendant.

HOLMES, J. We assume for the purposes of this decision that by reason of St. 1885, c. 374, § 110, the defendant was using the elevator illegally, and that the plaintiff did not share equally in the breach of law. We also assume that there was evidence of negligence on the part of the defendant towards the plaintiff. But the negligence, if any, consisted only in the failure to provide an automatic guard to the shaft; so far as appears, the defendant was not responsible for the elevator car having been moved. This being so, whether it be said that the plaintiff took the risk, or that he was negligent, or that the defendant's negligence was not the proximate cause of the injury, the result must be that the plaintiff cannot recover. For the plaintiff knew as well as the defendant that there was no guard to the shaft, and, we must presume, understood that, if the elevator car was not there when he pushed his coal car into the well, his car would tumble down the hole. In other words, he appreciated the danger so far as the defendant contributed to it. Although very possibly a guard would have prevented the injury, the plaintiff's conduct was nearer to the event. He did not rely on any such preventive, but took the chances of the elevator car being where he left it.

*Exceptions overruled.*