MARY A. GRAY, as Administrator, etc., of BERNARD GRAY, Deceased, Respondent, *v.* SIEGEL–COOPER COMPANY, Appellant.

*Negligence — death of one lawfully using an elevator on another's premises from falling between the platform and the wall of the shaft.*

In an action brought to recover damages resulting from the death of the plaintiff's intestate, it appeared that the defendant was the proprietor of a department store and that it maintained upon its premises a freight elevator which was used by persons delivering merchandise to it; that the opening into the elevator on the ground floor was on the east side of the elevator shaft and that on the other floors of the building the openings into the elevator were on the west side; that the north and south sides of the elevator car were inclosed, but that the east and west sides thereof were not protected by a guard of any kind; that when the elevator car was at the ground floor of the building the east side of the elevator was close to the wall, but that, owing to the fact that the wall was not so thick at the fourth floor of the building, there was, when the car reached that floor, a space of ten and one-half inches between the east side of the car and the wall; that the elevator shaft was lighted by a skylight and that when the doors leading into the shaft were closed there was sufficient light to see the space between the side of the elevator and the wall.

It further appeared that the plaintiff's intestate, who was an employee of a third party, was sent, at ten o'clock on a bright sunny morning, to deliver a load of meat upon the fourth floor of the defendant's premises; that the intestate, who had never been to the building before, went up to the fourth floor in the elevator and came down therein a few minutes afterwards; that the meat was then placed upon the elevator and that the intestate and two butchers in the employ of the defendant and the elevator man got upon it and rode to the fourth floor; that while the meat was being removed therefrom, the intestate, for some undis-

closed reason, stepped back to the rear of the elevator and fell through the space between the wall of the elevator shaft and the elevator car, sustaining injuries which resulted in his death.

It did not appear that the defendant had constructed the elevator or that any previous accident had happened which would charge it with notice of any danger arising from the use of the elevator.

*Held,* that a judgment entered upon a verdict in favor of the plaintiff should be reversed as there was no evidence that the defendant had been guilty of negligence or that the intestate had been free from contributory negligence.

Laughlin and Hatch, JJ., dissented.

Appeal by the defendant, the Siegel-Cooper Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 26th day of April, 1902, upon the verdict of a jury for $7,500, and also from an order entered in said clerk's office on the 10th day of April, 1902, denying the defendant's motion for a new trial made upon the minutes.

*H. Snowden Marshall,* for the appellant.

*Edmund D. Hennessy,* for the respondent.

Ingraham, J.:

The action was brought to recover the damages caused by the death of the plaintiff's intestate. The complaint alleges that the defendant was in the possession, management and control of a building on the east side of Sixth avenue, between Eighteenth and Nineteenth streets, in the city of New York; that on or about July 23, 1901, the defendant operated in and in connection with said premises a certain elevator for the purpose of conveying merchandise from the lower floor of its premises to the floors above; that the said elevator, on the 23d day of July, 1901, and for a long time prior thereto, was used by persons having business with the defendant, such as the delivery of merchandise to the defendant. These allegations of the complaint were admitted by the answer. From the evidence it appeared that on July 23, 1901, the deceased came to the defendant's premises to deliver a load of meat; that the deceased got upon this elevator, went up to the grocery floor and into the butcher's box; that a few minutes afterwards he came out and went down upon the elevator to the ground floor; that this

was the first time he had been on the defendant's premises or had used this elevator; that after he came down he, with two butchers in the employ of the defendant, took the meat from the wagon and put it on the elevator, and the two butchers, with the deceased and the man operating the elevator, got upon the elevator and started to take the meat to the fourth floor; that when they got to the fourth floor the elevator was stopped and the men started to take the meat from the elevator to put it into the butcher's box; that while they were taking this meat off the deceased was seen to step back to the rear of the elevator and fall between the wall of the elevator shaft and the elevator, from which he sustained injuries which resulted in his death. This was a freight elevator with an ordinary platform that opened outward upon the ground floor but inward upon the upper floors, and there was no guard or protection on the outer or inner sides. This construction seems to have been necessary, as freight was put upon the elevator from the street, while to unload the elevator upon the upper floors it was necessary that the elevator should open toward the interior of the building. It appeared that the floor of the elevator was close to the wall on the ground floor, but that in consequence of the wall being not so thick on the upper floor there was a space between the elevator and the wall on the fourth floor at which these goods were removed of about ten and a half inches, and it is through this space that the intestate fell. The evidence is that when the door out to the fourth floor was open the elevator was brightly lighted; that there was a large skylight over the elevator shaft, and when the door was open there was a large window right beside it; a policeman who examined the elevator on the day of the accident said that with the door shut it was dark, but that it was not too dark to see the opening; that with the door shut he could see it without trouble. The witnesses for the defendant testified that it was brightly lighted, and there is nothing to explain the accident except that the deceased stepped into this space and fell. This space between the elevator and the building was but ten and a half inches wide, and it is difficult to see how a man could fall through such a space without catching on the sides. As a matter of fact, he did fall, and the question to be determined is whether there was any evidence to justify a finding of the jury that the defendant was negligent or that the deceased was free from con-

tributory negligence. There was no claim that the elevator was out of repair; that any responsible officer of the defendant had knowledge of the fact that the persons delivering goods were in the habit of using this elevator. The evidence is that the only persons other than defendant's employees who ever used this elevator were those connected with the deceased's employers. The defendant had employed competent men to manage this elevator and transport articles from the street to the various floors of the building, and these employees of the defendant were in charge of the elevator at that time and were performing that work. Just why the deceased went up on the elevator was not disclosed. He did not go at the request of the defendant or any of its employees. The only ground upon which negligence can be claimed is as to the original construction of the elevator, or a failure of the defendant to supply some kind of a barricade or protection to prevent people upon the elevator from falling into this recess between the side wall of the building and the floor of the elevator on the upper floors. It is not alleged that the defendant constructed the elevator or had any relation to it except that it occupied the building and was using it in its business. Nor is there any evidence that any accident had happened in the use of the elevator, or that the defendants could fairly be charged with notice that this condition as it existed was dangerous or that an accident was liable to happen. It was a bright sunny day when the accident happened, about ten o'clock in the morning; the elevator had a sign on it "For freight only," and the color of the wall on the east side of the shaft was white; the floor of the elevator was dry, nothing on it to make it slippery, and no meat had been laid on the floor that morning; that meat was always hung upon racks and not placed upon the floor; there was nothing to cause the deceased to fall; nothing to explain why he went to the back of the elevator. All that we have is that upon this bright morning, in a light place, with the condition that existed perfectly apparent, the deceased for some unexplained reason, without any necessity incident upon the work that he was employed to do, went to the back of the elevator and fell between the elevator and the wall.

At the end of the plaintiff's case and again at the end of all the testimony the defendant moved to dismiss the complaint upon the

ground that the plaintiff failed to show negligence on the part of defendant; failed to show freedom from contributory negligence on the part of the plaintiff; failed to prove a cause of action. These motions were denied, to which the defendant excepted. I think the motions should have been granted. As to the defendant's negligence, it would seem that there was no proof to justify a verdict against it. This elevator was not for passengers, but for freight. There was sufficient light to show that there was a space between the wall and the easterly side of the floor of the elevator. There was nothing to justify the defendant in assuming that any one thus using the elevator would step down into a hole which was perfectly apparent, and which an inspection would have disclosed.

In *Lafflin* v. *Buffalo & Southwestern R. R. Co.* (106 N. Y. 136) the distance between the station platform and the car at a station on defendant's road was eleven inches. The plaintiff stepped off the car without looking to see the station platform, and fell. It was held that the defendant was not negligent. In *Barrett* v. *Lake Ontario Beach Imp. Co.* (68 App. Div. 601) the authorities are reviewed, and it was held that a platform and railing through which the plaintiff fell was not negligently constructed, and we think that the principle there established, supported as it is by the cases upon which it was based, prevents a recovery in this case. No case in this State is cited by the plaintiff which holds that the use of such an elevator justified a finding of negligence. There are citations from text books stating the general rules as to the obligation of those owning or occupying real property to keep the premises in a safe condition so that those rightfully thereon may not be injured; but I cannot see that it is the duty of one using a freight elevator to so construct it that a person using it in transporting freight could not fall off, and this judgment can only be sustained by establishing that proposition, for which there is no authority.

Nor was there anything that justified a finding of the jury that the deceased was free from contributory negligence. Here was a perfectly apparent condition which an examination would have disclosed; but for some unexplained reason the deceased stepped into the space between the elevator and the wall. There was no evidence that he slipped; that the floor was slippery or dangerous; that he looked and fell, or fell without looking; nothing to show

that he took any care to prevent the accident. There was, therefore, a failure to prove that the defendant was negligent or that the deceased was free from contributory negligence, and for this reason the complaint should have been dismissed.

It follows that the judgment and order appealed from must be reversed and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and PATTERSON, J., concurred; LAUGHLIN and HATCH, JJ., dissented.

LAUGHLIN, J. (dissenting):

The plaintiff brings this action as administratrix to recover damages for the death of Bernard Gray, who fell from the fourth story to the bottom of an elevator shaft on defendant's premises and was instantly killed on the morning of July 23, 1901. The defendant is a domestic corporation and has the entire management and control of a department store on the east side of Sixth avenue between Eighteenth and Nineteenth streets in the city of New York. It maintained an elevator in the southeast corner of these premises with a door opening on the ground floor on the east side of the shaft facing the place referred to as the receiving room, while on the other floors of the building the openings were on the opposite or west side of the shaft and faced the interior of the store. The platform of the elevator was of wood, brown in color, with an iron sill on its easterly edge, and its dimensions were ten feet five inches in length from north to south and nine feet eight inches from east to west. The north and south sides of the car were closed, the east and west sides were entirely open and without guards or chains of any sort. When at the ground floor or easterly entrance to the elevator the platform was within about an inch of the easterly side of the shaft, but the thickness of the rear wall of the building which constitutes the east wall of the shaft diminished as it went upward, causing a gradual recession of the wall from the line of travel of the elevator, leaving an open unguarded space of about ten and one-half inches between this wall and the easterly edge of the platform when at the fourth floor. There was a sign on each floor over the door of the elevator, "For freight only."

Gray was engaged in delivering a load of dressed lambs from his

employers, Schwarzchild & Sulzberger, by their direction to the defendant. It appears that this was the first time that he, Gray, had ever delivered meat to the defendant, and that on this occasion he first went up to the fourth floor, leaving the meat on the wagon outside, and went to the butcher box there and came down to the ground floor. Then the elevator man was called up to the fourth floor by a ring from that floor and brought down two butchers who loaded the meat on the elevator while Gray handed it to them from the wagon. Then all three rode up in the elevator with the elevator man to within five inches of the fourth floor, where the platform of the elevator was stopped in order that the racks on which the meat was hung by means of hooks — the rack being in the form of a double U, parallel with the floor of the car and distant therefrom about seven feet — might be on a level with an overhead track along which the meat was pushed or shoved to the place desired on the fourth floor. The distance from the rear or easterly end of these U-shaped racks to the easterly edge of the platform is one foot nine inches. It appears that while the decedent was assisting the butchers in unloading the meat at this floor he stepped back in this space, passing to the rear of a butcher who was similarly engaged, and fell through the aperture before described. One of the employees of the defendant testified that he saw the palms of the hands of decedent as he disappeared, and another employee of defendant saw his hands clutching at the sill.

The evidence indicates that it was not the custom of others who made deliveries to the defendant to ride up in the elevator with the goods ; but that the men who delivered for Schwarzchild & Sulzberger always did without objection and obtained the weight of the meat at the fourth floor after thus accompanying it up and assisting in unloading it from the elevator, and it is expressly admitted by the pleading that the elevator had for a long time been " used by persons having business with the defendant, such as the delivery of merchandise, stock, etc., to said defendant."

The shaft was lighted by means of a large skylight on the top of the seventh floor ; and the elevator had no screen on its top, simply the frame of the elevator, but there is a conflict in the evidence as to how light the elevator was, and a further conflict in the evidence as to the condition of the floor and the color of the wall of the

shaft at the time of the accident. A policeman called by the plaintiff testified that he examined the floor of the car about fifteen minutes after finding the body of Gray at the foot of the shaft on this morning and found it slippery and greasy; that the color of the wall was dull, and that, although the sun was shining outside, the light in the shaft was dull and the back of the elevator when at the fourth floor was dark even when the door was open. The testimony of some of the employees of the defendant indicates that the shaft was well lighted by means of the skylight above; that this increased when the doors were open at the fourth floor; that the rear wall was white, and that the platform of the car was dry and they never put meat on it. There was a large window on the fourth floor about twenty-six feet distant from the elevator door, but this was partially obscured by an office and a shade.

At the close of the plaintiff's case the defendant moved for a nonsuit on the ground that no negligence on its part was shown and that decedent was not free from contributory negligence and that the plaintiff had failed to prove a cause of action. It renewed the motion at the close of all the evidence and excepted to the denials of these motions.

It is claimed by the appellant that it was error to submit the case to the jury, and also that the verdict of the jury on the question of the freedom of decedent from contributory negligence and on the question of defendant's negligence is against the weight of the evidence. We think the case was properly submitted to the jury, and that the verdict is fairly sustained by the evidence. The decedent was not a trespasser nor a mere licensee. There was evidence tending to show that he was there discharging the business of his employers with the defendant, and engaged in the usual course of that business by the implied invitation of the defendant. The court properly submitted that question to the jury under instructions in effect that if they found that decedent was a mere volunteer and not there in the regular course of his employment the defendant was not liable. The decedent's conduct must be judged by the facts disclosed. This was his first delivery at the defendant's place of business. He followed the previous custom of the other employees of Schwarzchild & Sulzberger, and the inference is that he acquired knowledge in some manner of their method of delivery. He first reported directly to the butcher box where this meat was

destined to be placed; and, in response, the butchers came down and loaded the meat onto the elevator as he handed it to them from the wagon. He then accompanied them in the elevator to the fourth floor, presumably for the purpose of ascertaining the weight of the meat upon its being weighed after delivery upon the fourth floor. It was his duty to deliver the meat and also evidently to ascertain the weight allowed by the defendant. It cannot be said as matter of law that the delivery was complete until it was unloaded on the fourth floor, where it was to be weighed. It was his duty to deliver, and he having been allowed to participate in the delivery on the fourth floor, it was the duty of the defendant to see that he sustained no injury through its negligence. (*Weight* v. *Northwestern R. Co.*, L. R. 1 Q. B. Div. 252.) There is no evidence that he was aware of the sign above the elevator, and, if there were, his riding in the elevator was not the cause of his death. He did not fall while riding in the elevator, but only after it had stopped and while engaged in assisting in unloading the meat, as he might have done had he walked up or ridden in another elevator. There is no direct evidence that he knew of the opening between the easterly side of the platform and the easterly wall when the elevator arrived at the fourth floor. The evidence that the palms of his hands were toward the elevator door as he dropped, and that he clutched at the sill, indicates that he stepped backward into this opening. The jury were justified in finding that the light was such that the opening was not open and obvious to one in his position and possessed of his limited knowledge of the surroundings. It could not be said as matter of law that he was negligent. On the contrary, the finding of the jury that he was free from negligence was fairly justified. The negligence of the defendant, we think, was clearly established. There was evidence that the elevator was not well lighted, and with this wide unguarded opening it became a trap into which any employee assisting in unloading the meat, in the absence of knowledge of the situation, or not having the same constantly in mind, was liable to step and lose his life. No other question is presented for our consideration.

The judgment and order should be affirmed, with costs.

Judgment and order reversed, new trial ordered, costs to appellant to abide event.