WALTER HUMPHREYS *vs.* PORTSMOUTH TRUST AND
GUARANTEE COMPANY.

Essex.    November 4, 1903. — November 25, 1903

Present: KNOWLTON, C. J., MORTON, BARKER, LORING, & BRALEY, JJ.

*Negligence.*

A workman employed in a shoe factory on the second floor of a building, who on
the third morning of his employment is injured by falling down an elevator well
when entering the building by a rear door on an alley way, may be found to
have been in the exercise of due care, as against the owner of the building in
control of the elevator, if it appears, that on the first morning he entered the
building by the front door, that on the second morning he followed other work-
men through a rear door into a small dark entry leading by a staircase to the
factory, and that on the third morning, which was dark, he was alone, and, sup-
posing that he was entering by the same rear door, entered another similar door
near it which was open and led into the elevator well down which he fell.

TORT for personal injuries from falling into an elevator well
in a building in the city of Lynn owned by the defendant.
Writ dated March 13, 1901.

At the trial in the Superior Court before *Wait,* J., it appeared
that the plaintiff was employed by Charles W. Porter, a shoe
manufacturer doing business under the name of William Porter
and Son, and occupying the second story of the defendant's
building. Porter testified that during his occupation the defend-
ant took care of the elevators. There were three entrances to
the Porter factory, one on Willow Street, another on Blake
Street, and the third through an alley way which led to the rear
of the building. The plaintiff testified that he had been in the
employ of William Porter and Son two and one half days before
he was hurt; that the first day he entered through the Blake
Street entrance by the office, the front way; that the second
morning he entered by the rear entrance, as he could not get in
by the front door and therefore had to go around to the rear
door on the alley way; that the Willow Street entrance was
locked and there was a sign there stating that employees must use
the rear door ; that he followed other workmen around through
the alley way to this rear door and followed them in ; that he
went into a small entry way and thence upstairs to his work ;

that there was no light at all in this entry ; that it was dark, and that looking down he could not see the floor.

The plaintiff further testified that on the easterly side of the alley way, side by side, there were two entrances, the one nearest Almont Street being the entrance to the small entry way by which the plaintiff had entered on the morning of the day before he was hurt; that this door was three feet ten inches wide ; that the door leading to the elevator well was the second entrance coming from Almont Street and was five feet two inches beyond the first entrance ; that both entrances were in the same line of wall and the same height from the ground; that the elevator entrance was four feet three inches wide ; that both entrances appeared the same ; that each entrance had two fire doors which swung outward to each side and were painted a dark green ; that he did not know there was an elevator or an elevator entrance there ; that on the third morning, the day of the accident, he was alone, walked past the entrance he had used the previous morning and came to the elevator entrance, the doors being open without guard or gate and flat against the side of the building ; that he supposed it was the same door he had entered the previous morning, and stepped in intending to go upstairs ; that he looked in and saw a closed door which he intended to open and go upstairs, as on the previous morning he had opened a door to go up to the factory ; and that when he stepped in he fell twelve feet and five inches to the bottom of the elevator well.  The facts as to the hour and the darkness of the morning are stated by the court.

At the close of the evidence the judge refused to order a verdict for the defendant.  The jury returned a verdict for the plaintiff in the sum of $825.  The judge submitted to the jury the following questions:  1. Was the plaintiff in the exercise of due care?  2. Was the defendant in control of the elevator?  3. Was the defendant negligent?  To each of these questions the jury answered " Yes."  The judge reported the case for determination by this court.  If the ruling of the judge was right, judgment was to be entered on the verdict; otherwise judgment was to be entered for the defendant.

*J. H. Sisk,* (*R. L. Sisk* with him,) for the defendant.

*W. H. Niles,* for the plaintiff.

Loring, J.  We are of opinion that judgment should be entered on the verdict.

1.  The evidence warranted a finding that the plaintiff was in the exercise of due care.  It is ordinarily true that a person who walks into an elevator well is guilty of contributory negligence. *Taylor* v. *Carew Manuf. Co.* 143 Mass. 470.  *Patterson* v. *Hemenway*, 148 Mass. 94.  *Keenan* v. *Edison Electric Illuminating Co.* 159 Mass. 379.  *Ballou* v. *Collamore*, 160 Mass. 246.  *Mc-Carvell* v. *Sawyer*, 173 Mass. 540.  It is also true that a person who goes forward in the dark in a place with which he is not acquainted is not in the exercise of due care.  *Campbell* v. *Abbott*, 176 Mass. 246.  *Daley* v. *Kinsman*, 182 Mass. 306.  But in the case at bar the plaintiff under the circumstances might well have mistaken the elevator door, which was open, for the door by which he entered the day before, which was shut, without being guilty of negligence.  The accident happened at five to seven minutes after seven o'clock in the morning of January 4, and there was evidence that the morning was damp, misty, cloudy and dark.  There was also evidence that the alley way on which the two doors opened was not more than ten feet and one half wide, and was hemmed in on each side by brick buildings of the ordinary color, six stories in height.  That it was so dark there at the time that a person in the alley way could see only as in the dusk.  It appeared that the two doors were similar in appearance, the door of the elevator being five feet beyond the door which the plaintiff should have taken, and that while the door he should have taken was closed the shutters of the elevator were open and "lay back against the wall shining all nice and bright."  We are of opinion that under the circumstances of this case the plaintiff might be found to have gone forward in the dark without being guilty of negligence.  The jury were warranted in finding it to be so dark beyond the entrance to the elevator that the plaintiff could not see whether there was a hole or floor in front of him.  There was also evidence that the landing beyond the proper entrance was equally dark when the plaintiff used it the day before.  Added to this there was a door on the left of each entrance which might be found to have further misled the plaintiff.  The case is very like *Gordon* v. *Cummings*, 152 Mass. 513.  See also *Parker* v. *Barnard*, 135 Mass. 116.

2.  The testimony of the plaintiff's employer warranted a finding that the elevator was within the defendant's control.  He testified " that during his occupation the defendant took care of the elevators."

*Judgment on the verdict.*