[L. A. No. 3193. Department Two.—March 26, 1914.]

CARRIE F. KAUFFMAN, Appellant v. MACHIN SHIRT COMPANY (a Corporation), et al., Respondents.

NEGLIGENCE—USE OF ELEVATOR—BOY FALLING DOWN SHAFT—CONTRIBUTORY NEGLIGENCE.—Where a boy fifteen years of age, having a package to deliver on one of the upper floors of a building, personally operates the elevator in accordance with the practice of the owners of the building permitting persons having business therein to thus use the elevator, and, upon arriving at the floor of his destination and finding the elevator door partly open, further opens the door, delivers the package, returns to the elevator in about a minute, and, without looking, steps into the shaft and is killed, the elevator having in the mean time been moved by some one else, he is guilty of such contributory negligence as prevents any recovery of damages for his death.

ID.—ELEVATORS—NONCOMPLIANCE WITH ORDINANCE PRESCRIBING DEVICES FOR DOORS.—And it is immaterial, so far as the right to recovery in such case is concerned, that the elevator was not constructed and operated in accordance with a municipal ordinance prescribing certain safety devices for opening and shutting the doors.

ID.—CARE IN ENTERING ELEVATOR—BOY FIFTEEN YEARS OF AGE.—A boy fifteen years of age, who lives and works in a great city where

hundreds of elevators are in daily use, cannot be considered ignorant of the necessity of exercising ordinary caution in entering an elevator.

ID.—CONTRIBUTORY NEGLIGENCE—WHEN QUESTION OF LAW.—Ordinarily the question of contributory negligence is one largely of fact for the consideration of the jury; but where the standard of conduct required of persons under given circumstances has been plainly neglected by the person seeking relief, it then becomes a question of law.

APPEAL from a judgment of the Superior Court of Los Angeles County. Curtis D. Wilbur, Judge.

The facts are stated in the opinion of the court.

Chas. F. Blackstock, and N. Blackstock, for Appellant.

F. W. Morrison, Jones & Weller, and R. P. Jennings, for Respondents.

MELVIN, J.—The general demurrers of the defendants to plaintiff's second amended complaint having been sustained without leave to amend unless special application should be made within five days and such application not having been made, judgment of dismissal was entered. From this judgment plaintiff appeals.

The plaintiff sued for damages for the death of her son caused by a fall down an elevator shaft. The building in which the unfortunate accident occurred was the property of the defendants Winstel, and defendant Staub was the lessee of the premises, while the Machin Shirt Company, a corporation, was sublessee of the fourth floor. The complaint charges that the elevator had been constructed and was maintained in violation of two certain ordinances of the city of Los Angeles, one requiring all doors to elevator shafts to be so constructed that they could be opened from the inside only, except the door on the ground floor which should be so arranged that it might be opened from the outside but should be provided with a lock and kept locked when the elevator was not in use; the other prescribing an automatic device by which each door to any elevator shaft should close whenever the elevator should move away from the floor where said door was located. There is some question about the applicability of such ordinances to

the elevator which was used by the plaintiff's decedent on the day of the accident.

It is alleged that on April 14, 1911, George Kauffman, an inexperienced boy fifteen years of age and unaccustomed to handle such elevators, was sent by his employers to deliver a package to the Machin Shirt Company on the fourth floor of the Winstel building. According to the averments of the complaint, the boy entered the elevator and used it for the purpose of transporting himself and the package to the fourth floor. This was in accordance with the practice of the defendants who permitted and expected messengers and employees of customers having business in the building to use said elevator. The boy had seen other messengers from the establishment of his employers use this same elevator and there was no apparent reason why he could not do so with safety. On reaching the fourth floor the lad found the door to the elevator shaft open and unfastened. He pushed it open about a foot, stepped from the elevator platform into the hall, walked about twenty or thirty feet to the establishment of the Machin Shirt Company, and returned to the door of the elevator shaft, not more than one minute after he had emerged from the elevator. "To all appearances" (to quote directly from the complaint) "the said door and the said platform were in the same condition that he had left them less than one minute before." Some one had moved the elevator to another floor. Kauffman believing that it was where he had left it, stepped into the shaft, fell to the basement and sustained injuries from which he subsequently died.

It is the contention of the respondents that, conceding their negligence in failing to maintain doors to the elevator shaft constructed in conformity with local ordinances, the accident was not proximately connected with such unlawful arrangement. There was no pleading of willful or wanton conduct on the part of defendants, and in the absence of such pleading no such conduct may be assumed. (*Esrey* v. *Southern Pacific Co.*, 88 Cal. 406, [26 Pac. 211].) Admitting for the sake of argument, they say, that the ordinances mentioned in the complaint were violated by them, and that they were consequently guilty of that sort of negligence not aggravated by willful or wanton conduct on their part, they may not be held responsible, because the boy's own negligence was the

proximate cause of the injury. A part of one of these or-
dinances which, according to the allegations of the complaint
was in effect when the elevator was installed, was set forth
as follows:

"Sec. 231. All elevator shafts and all elevator inclosures
of every kind, shall have iron doors, which shall be made to
open from the inside of said elevator shaft only excepting the
door upon the ground floor of the building, which shall also
have a lock to permit opening same from the outside. (Ord.
6108, (N. S.), sec. 92, which ordinance is set forth as section
231 of the Penal Ordinances of the city of Los Angeles, at
page 96.)"

The other ordinance is not pleaded in terms, but the allega-
tions in relation to it are as follows:

"That the door of said elevator shaft at said fourth floor
was not at any of the times herein mentioned so constructed
that the same would close automatically if the said elevator
was moved away from said fourth floor, as the same should
have been constructed to safeguard the lives of persons who
were entitled to use the same as prescribed by sections 30
and 31, known as Ordinance No. 19121 new series of the city
of Los Angeles, and which said ordinance was adopted and
approved by the city council and the mayor of said city on
the fifth day of November, 1909, and which ordinance pre-
scribed that such elevators should be constructed with auto-
matic doors, so that when the said platform was removed from
any given floor the doors at said floor would close auto-
matically."

The violation of the ordinance first quoted was clearly not
the proximate cause of the accident. When he reached the
fourth floor the boy found the door partly open. It might
have been left in that condition even if it had been constructed
in such manner that when closed, it could be opened again only
from within. The violation of the other ordinance, say re-
spondents, was not the proximate cause of the accident because
the boy had notice that there was no automatic device for open-
ing and closing the door. He found the door somewhat open
and unfastened and he thereupon pushed it open about a foot.
The allegation in the complaint is that the ordinance pre-
scribed a device by which the doors of the elevator would close
automatically when the elevator should be *removed* from the

floor at which it had stopped. But inspection of the ordinance itself, or those parts of it pleaded by number in the second amended complaint, shows that the automatic device contemplated by the ordinance was for *opening and* closing the doors of elevators. These sections are as follows:

"Section 30. Every elevator for the carriage of freight or passengers, constructed or installed in any building in the city of Los Angeles, subsequent to the passage of this ordinance shall have all safety appliances required and prescribed by this ordinance."

"Section 31. Every freight elevator constructed or installed subsequent to the passage of this ordinance shall be constructed throughout all parts with sufficient strength to sustain six times what such elevator is designed to carry. . . . In any case, where a freight elevator is not inclosed in a shaft, hatchways shall be provided at each floor, opening with a trap door which shall open and close as the elevator passes."

Assuming therefore that the ordinance was in force and applicable to the elevator of respondents, the very condition in which the boy found the door when he reached the fourth floor was notice to him that there was no automatic device attached to that particular door, or that if one had been provided it was not in working order. He knew it was possible to leave the door partly open while the elevator was at the level of the fourth floor because he had left it in that condition. He must have known that it was possible to move the car because he himself had come up to the fourth floor in it a minute before he fell. There is no allegation that any one was guilty of negligence in moving the elevator from that floor. Nor is the situation helped by the allegation that when he returned the elevator and shaft were *to all appearances* in the same condition in which he left them. There is no statement that he looked or that if he had looked there was any physical reason why he could not have seen that the elevator had been moved. In the absence of any such showing the court must assume that "to look was to see" and that if he had looked he must have noticed the danger. One may not thus heedlessly disregard the commonest precautions for his own safety. (*Green* v. *Southern Pacific Co.,* 132 Cal. 254, [64 Pac. 255]; *Hamlin* v. *Pacific Electric Ry. Co.,* 150 Cal. 777, [89 Pac. 1109]; *Brown* v. *Pacific Electric Ry. Co.,*

*ante,* p. 200, [138 Pac. 1005].) It is true that ordinarily the question of contributory negligence is one largely of fact for the consideration of the jury, but where the standard of conduct required of persons under given circumstances has been plainly neglected by the person seeking relief, it then becomes a question of law. (*Hamlin* v. *Pacific Electric Ry. Co.,* 150 Cal. 777, [89 Pac. 1109], and *Brown* v. *Pacific Electric Ry. Co., ante,* p. 200, [138 Pac. 1005].) George Kauffman was an inexperienced boy fifteen years of age, but that did not exempt him from the necessity of taking ordinary simple precautions. He was old enough and sufficiently experienced to run the elevator in safety to the fourth story of the building. He lived and worked in a great city where hundreds of elevators are in daily use. It would be absurd to say that a lad of that age was ignorant of the necessity of exercising ordinary caution in entering an elevator. The case of *Ballou* v. *Collamore,* 160 Mass. 246, [35 N. E. 463], is very similar to this. The facts were was follows: A boy fifteen years of age having goods to deliver at various suites in a building entered the "freight box" of a combined passenger and freight elevator, telling the operator the numbers of the suites to which he wished to take goods. The first stop was made at the fourth floor and the boy opened the door of the elevator shaft, left it open, and took his parcels to the customer on that floor. Returning, he entered the open door without looking and was killed, the operator of the elevator having gone with a passenger to an upper floor. The supreme court of Massachusetts said: "Under the circumstances, even for a boy of fifteen to step through the open door into the elevator well without looking to see if the elevator was there was careless. . . . In this case the plaintiff himself left the door open, and knew or ought to have known that it was at least as probable that the elevator would not be there as that it would. *Taylor* v. *Carew Manuf. Co.,* 140 Mass. 150, [3 N. E. 21]; s. c. 143 Mass. 470, [10 N. E. 308]; *Patterson* v. *Hemenway,* 148 Mass. 94, [12 Am. St. Rep. 523, 19 N. E. 15]; *Gaffney* v. *Brown,* 150 Mass. 479, [23 N. E. 233]; *Keenan* v. *Edison Electric Illuminating Co.,* 159 Mass. 379, [34 N. E. 366]."

But there is another reason why the demurrer to plaintiff's second amended complaint was properly sustained. The ordinance providing for automatic doors to elevator shafts was

approved in the month of November, 1909, as specifically set forth in the complaint, while in the same pleading it is averred that the elevator was installed in 1906 and the ordinance by its terms applies so far as safety devices are concerned only to elevators constructed or installed subsequent to its passage. Furthermore, the complaint under consideration described the elevator as one having a shaft through which it was operated, while section 31 quoted above commands the maintenance of automatic doors only on freight elevators not inclosed in shafts. Whether we regard the elevator as one designed for the carriage of freight or of passengers the ordinance pleaded was not violated and the negligence of the respondents sought to be predicated upon the alleged violation did not exist.

A licensee using a freight elevator is contributorily negligent in stepping from the platform into an unguarded space between the elevator and the wall of the shaft. (*Gray* v. *Siegel, Cooper Co.*, 78 App. Div. 118, [79 N. Y. Supp. 813].) But whether we regard the decedent under the facts pleaded as a mere licensee or as a person using the elevator by invitation of the defendants, we cannot say that he was excused for his failure to observe the absence of the elevator when he returned to the open door of the shaft.

The judgment is therefore affirmed.

Henshaw, J., and Lorigan, J., concurred.