[S. F. No. 6804.   Department One.—March 7, 1916.]

ANNA M. SEBERG et al., Respondents, v. MORTIMER FLEISHHACKER et al., Defendants; VAN EMON ELEVATOR COMPANY (a Corporation), Appellant.

Negligence — Putting Head into Elevator Shaft — Contributory Negligence.—A person who protrudes his head into an elevator shaft, through an aperture in the elevator door of sufficient dimension to afford a view of the interior of the shaft without so doing, is guilty of contributory negligence, if he fails to take reasonable precautions to ascertain whether or not the elevator was in operation or in dangerous proximity.

Id.—Unwarranted Inferences as to Cause of Accident.—In an action to recover damages for the death of a person killed by the descending elevator while so protruding his head into the shaft, the jury are not at liberty to infer, in the absence of evidence to support such theory, that the deceased, while walking along the floor, may have stumbled and fallen into the opening of the door, or may have lost his balance while looking in, and was not able to get out in time.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order refusing a new trial.   John Hunt, Judge.

The facts are stated in the opinion of the court.

Samuel Knight, and F. E. Boland, for Appellant.

A. M. De Vall, for Respondents.

SHAW, J.—This is an appeal by the defendant, Van Emon Elevator Company, from the judgment, and from an order denying its motion for a new trial.

The action was begun by the widow and minor child of Angelo R. Seberg, deceased, to recover damages caused to the plaintiffs from the death of said Angelo R. Seberg by the alleged negligence of the defendants. The action was dismissed as to all the defendants except the Van Emon Elevator Company. The jury returned a verdict against said company for five thousand dollars damages. The defendant Fleishhacker, as owner, had contracted for the erection of a building in San Francisco. The different portions of the building were let to different contractors. McLeran & Peterson were the general contractors for the erection of the building. They were to furnish and install all the carpenter work, roofing, glazing, tiling, marble work and ornamental ironwork, in the building, and particularly all carpenter work, ironwork, woodwork and glazing inclosing the elevator shaft, including the sliding-doors therein giving access to the elevator from the several floors of the building. The Van Emon Elevator Company contracted to furnish and install the elevators only. At the time of the accident, which caused the death of the decedent, this elevator had been installed and was running, but the work on it was not fully completed. It was operated by and was in control of the elevator company. The iron grill and woodwork inclosing the elevator shaft, including the doors, were completed, with the exception of placing the glass in the upper part of the doors. An aperture was left in the doors at a height of three and a half feet, in which the glass was to be inserted. The Monarch Iron Works, as subcontractor of McLeran & Peterson, were putting in the iron and brass work, including the brass plates called kick-plates, to be placed across the lower part of the front doors of the building, and also the ironwork inclosing the elevator shaft. Seberg was in the employ of the Monarch Iron Works as a draftsman. A part of his duties was to estimate the work on the Fleishhacker job, and to inspect the work placed in the building by his employers. On the day of the accident he was sent to the building to measure the places for the kick-plates, all of which were on the ground floor. For some reason he went to the second floor of the building, put his head through the aperture left in the door opening into the elevator shaft, whereupon his head was struck by the descending elevator, causing his death.

The appellant contends that the evidence shows that the deceased was guilty of contributory negligence in putting his

head through the opening in the door. We think this defense was established. The act of putting one's head into an elevator shaft, without taking reasonable precautions to ascertain whether or not the elevator is in operation, or in dangerous proximity, is clearly a careless act. The opening in the door was twenty-two inches wide and three feet long from top to bottom. One could easily look through this opening, and, without protruding his head into the shaft, could ascertain whether or not the elevator was near by in either direction. If Seberg had done so and had perceived the elevator coming, or in close proximity, it would have been careless and imprudent for him to put his head through the opening into the shaft. If he put his head through without looking he was careless. In either case, therefore, he would be chargeable with negligence. He had been sent there to take the measurement of the space for the kick-plates. It was also a part of his duty to inspect the work done by his employers on the building, including the grill work inclosing the elevator shaft, but he had not been sent there for that purpose. It is to be presumed, unless the contrary appears, that he was in the ordinary use of his faculties. There is not the slightest indication in the evidence to the contrary. No explanation is given to account for his conduct. The only reasonable conclusion is that his doing so was a thoughtless and imprudent act not coming within the definition of ordinary care. This act of his contributed directly to the injury which caused his. death.

The only explanation offered by the respondent's counsel is that the jury were at liberty to infer that while walking along the floor he may have stumbled and fallen into the opening of the door, or that he may have lost his balance while looking in, and was not able to get out in time. No proof was offered to show that there was any obstruction on the floor near the elevator. There is no evidence to support either theory. They are pure speculation without facts upon which to base them. With respect to the claim that he may have lost his balance, it is sufficient to say that if, as we have shown, it was negligence to put his head in without looking, it would be greater negligence if he leaned so far into the shaft as to cause him to lose his balance, without taking the precautions above mentioned to ascertain whether or not it was in operation.

The case of *Gay* v. *Winter,* 34 Cal. 153, 164, was one where a small boy fell into a hole in the sidewalk, no one seeing him fall. The court said that in the absence of direct proof the' natural instincts of self-preservation would justify the jury in inferring that the child was using ordinary care and dili-gence in walking along the sidewalk. The circumstances are not similar. Ordinarily one does not apprehend danger from holes in the sidewalk. Certainly a small boy could not be ex-pected to do so and could not be charged, as a matter of law, with negligence, if he did not carefully look for such holes. The deceased, if he possessed ordinary intelligence, must have known that it was a dangerous act to protrude himself into the elevator shaft without looking to see whether or not it was in operation. The rule announced in that case does not apply to the case at bar. On the other hand, the case of *Kauffman* v. *Machin Shirt Co.,* 167 Cal. 506, 510, [140 Pac. 15], is in all substantial particulars identical with the case at bar, and sup-ports the above conclusions.

It is unnecessary to determine the other questions arising in the case and presented in the briefs.

The judgment is reversed.

Lawlor, J., and Sloss, J., concurred.

Hearing in Bank denied.