SOMMERVILLE, J.
In these cases, consolidated for the purposes of trial, the plaintiffs sue defendant for damages to them resulting from a collision of a street car and a fire truck, while the latter was responding to a silent alarm of fire.
Mrs. Boylan, in her own behalf, and as the representative of her two minor children, asks for a judgment of $20,000 for herself, and for $10,000 for each child. Mr. Boylan was the tillerman of the fire truck when it was turned over in the collision, and he was killed. There was judgment for $10,000 for the widow, and for $2,000 in her favor as natural tutrix.
Mr. Cahill was the driver of the truck, and he has judgment for $3,000 for injuries sustained by him.
*188 Defendant has appealed; and plaintiffs have answered, asking for amendments of the judgments by increasing the amounts, and by giving interest.
Defendant first filed a general denial, -and subsequently filed a supplemental answer in which it alleged contributory negligence on the part of the driver and tillerman of the truck.
Defendant admits:
“That the fire apparatus has the right Of way over all other vehicles, but it denies that when the truck which plaintiff (Cahill) was driving reached St. Charles avenue that the car was sufficiently distant from Calliope street for the driver of the apparatus to undertake to cross the tracks in safety,” etc.
On the brief for defendant, it is stated:
“The accident from which these suits arise occurred on the night of November 23, 1913, at about a quarter to 9 o’clock, at St. Charles avenue and Calliope street. A truck of the fire department proceeding in Calliope street from Carondelet street, towards the river was struck by a Tulane avenue car running towards Canal street on the track in the neutral ground of St. Charles avenue on the river side thereof, and overturned into the adjoining asphalt roadway. The driver and all the firemen on the truck were more or less seriously injured. Troyer, the tillerman, died at 3 o’clock that night.”
Defendant asks for the setting aside of the Verdicts in the two cases, and for a reversal of the judgments therein, on the ground that:
“The preponderance of the evidence found in the testimony of those disinterested witnesses who were in the better position to observe establishes :
“(1) That the motorman was careful and did everything a reasonably prudent person in like circumstances would have done to see the danger and to avoid it.
“(2) That the driver of the truck was not careful, that he could have seen the car had he looked and should have known that the car could not be stopped in time to avoid the collision, and that he could not make the crossing safely ahead of the car.
“(3) That the driver of the truck could have avoided the accident by turning around St. Charles avenue, and that he had the last clear chance to prevent collision but failed to act.”
“It is the duty of the motorman or other person in charge of a street car to give way to, and to use due precaution to avoid colliding with, a fire engine, truck, or wagon on its way to extinguish a fire and save property therefrom, and to hold himself in readiness to avoid such collisioú when he has reason to anticipate-that such an engine, truck, or wagon may appear, as when he is approaching a house in which they are kept. The exercise of such precaution may be and sometimes is required by a rule or regulation of the street railroad company, or by ordinance or statute.” 36 Cyc. 1513.
' The state statute provides:
“That the officers and men of the fire department and their apparatus of all kinds, when on duty, shall have the right of way to any fire- and in any highway, street or avenue, over any and all vehicles of any kind except those carrying the United States mail,” etc. Section 8, Act No. 58, 1910, p. 100.
[2, 3] Defendant admits that the fire apparatus had the right of way. It further admits that the duties of firemen and motormen on street cars at crossings are matters for the jury to consider, and for the jury to-’ determine whether the care required by the circumstances has been exercised by those in charge of the colliding vehicles; but, as has-just been stated, it charges that, while due care was used by the motorman in charge of the car which collided with the truck, those in charge of the truck were negligent, and contributed to the accident which resulted in their losses and damages.
The jury has found to the contrary. They have found the rate of speed of the street car was excessive, under the circumstances; that the motorneer and conductor of the street car ,were negligent; and that plaintiffs did not contribute negligence, and precipitate the accident of which they complain.
The evidence in the record supports the findings of the jury. The speed of the car was negligence; the motomeer was negligent in acquiring the speed of 8 to 12 miles an hour at the place of collision; and defendant’s servants could have avoided the accident by the exercise of reasonable care and diligence. So whether the plaintiffs were negligent to such an extent as to have contributed towards the accident was a question *190 for the jury, and it has decided they were not.
[5] The evidence shows that the motorman was not careful; that he did not inform himself as to the rules of the company; and he did not do those things which a reasonably prudent person in like circumstances would have done to have seen the danger, and to have avoided it.
He disregarded rule 26 of the defendant company, .which reads as follows:
“Approaching Gross-Streets. Approach all streets with care; and whenever practicable, with the power off. Gongs should be rung before reaching the intersecting streets, or turning a curve. In approaching paved, or graveled streets, motorman should have his car under control at least one hundred feet before reaching the street, and passing over the same,” etc.
The motorneer testifies that Calliope street was not a paved street, although the evidence shows that that street, on the lake side of St. Charles avenue, is paved with Belgian blocks; and that the street on the river side of St. Charles avenue is paved with square blocks. He claims that paved streets are only those which are paved with asphaltum. There is no excuse for such gross ignorance on his part. Because he was not approaching a paved street, in his opinion, he did not approach Calliope street with care, or with the power off. The power was on full as he approached that street, and the car .was going between 8 and 12 miles an hour. He therefore did not have his car under control at least 100 feet before' reaching Calliope street, and passing over the same. He also violated rule 28 of the defendant company, which reads:
“All apparatus belonging to the fire department, Charity Hospital ambulances, the police, the fire patrol wagons, have the right of way. When any of these vehicles are seen or heard approaching a track, the motormen must exert their best efforts to stop the car and give them the right of way.”
The motorneer testifies that he was ignorant of the fact that a fire engine house was located in Calliope street between St. Charles avenue and Carondelet street, although he had been operating as a motorneer on St. Charles avenue for several years. He should clearly have informed himself of the location of the houses of the fire department, so as to have been in a position to yield the right of way, should they suddenly appear while answering a call or alarm for fire. Not knowing that Calliope street was paved, or that an engine house was located therein, he failed to • look for and see the truck as it emerged from Calliope street until the horses attached to the truck were actually on the roadway of the avenue, and he was then unable to slacken the rapid speed of the car in time to avoid striking the truck .which had the right of way. He testifies that he failed to hear the clanging of the gong which was being operated on the truck. This failure on his part was evidently due to inattention; he should have heard it, for it was heard by a passenger on the rear platform of the car, and by a youth who was in a closed store at the corner of Clio street and St. Charles avenue, some 300 feet away. It was also the duty of the conductor on the car of the de-. fendant company to have heard the gong and to have notified the motorneer, who evidently was not paying attention to his duty, so as to have avoided the accident.
The motorneer testifies that he was within about 75 feet of Calliope street when he saw the truck for the first time; and that it was impossible for him to stop his car, going at the rate it was going, before colliding with the truck; and it is argued that rule 26, directing motormen, on approaching paved or graveled streets to have their cars under control at least 100 feet before reaching the street, and passing over the same, was intended for the guidance of motormen, and not in the interest of public safety. In construing this rule we have held that it was “a measure of precaution against collision with travelers upon the cross-street.” Wolf v. *192 New Orleans Ry. & Light Co., 133 La. 891, 63 South. 392.
The evidence shows Calliope street to be a well-paved thoroughfare, which is in constant daily use, although that use is not so great at 9 o’clock in the evening.
The law as stated in Nellie on Street Railways is:
“See. 394. That it is negligence to run a car over a crossing in a much traveled street at a high and dangerous rate of speed, or without being on the lookout and having the car under control, and using the proper means to stop it so as to avoid a collision.”
“Sec. 397. It is the duty of the conductor as well as the motorman, if either hears the sound of a gong of a hose-carriage, or by the exercise of ordinary care might have discovered the danger in time to have averted the collision, to use all means at hand to that end; and the company is responsible for the negligence of either.”
In the case of Coles v. N. O. Ry. & Light Co., and Kane v. N. O. Ry. & Light Co., 133 La. 915, 63 South. 401, we say:
“The jury decided both cases in favor of defendant. The verdicts were unanimous; and the jurors were better judges of the credibility of the witnesses and of the question of ordinary care than we can be.”
And, in these cases, the verdicts were unanimous, and the jurors were better judges of the credibility of the witnesses and of the question of ordinary care than we can be; and, after having reviewed the evidence, we are unable to say that the verdicts are not in accordance with it.
[4] The obligation which rests upon the employe of defendant to be on the lookout for the apparatus of the fire department is more imperative than that of the officers and men of the fire department to be on the lookout for the apparatus of the car company. But, apart from that obligation, we are of opinion that liability for the accident in these cases is fixed upon the defendant, with reasonable certainty, by the testimony, mainly, of its own witnesses. The testimony in the cases satisfies us that the motorneer was not properly attending to his duty. The captain of the truck who was seated beside the driver thereof, the latter having been injured in the accident, testified that he looked and saw the approaching car at a sufficient distance, say about 200 feet, from the crossing, in which space the motorneer might have checked the car, if he had been paying attention to his duty; and the truck would have crossed the track in safety. The motorneer, evidently, was not keeping a proper lookout for pedestrians and other persons using the street crossing. 1-Ie looked too late to avert the accident, and that was not to look at all. Shields v. Fairchild, 130 La. 648, 58 South. 497.
It is the' duty of those who operate street cars to keep a vigilant watch for all vehicles and persons on foot, either on the track, or moving towards it, and, on the first appearance of danger, to stop the car within the shortest space of time possible.
[1] The plaintiffs in these cases have proved the nature of their injuries, respectively, and the defendant’s share in causing them. The other circumstances, contributory negligence, etc., which would leave them without a claim, are put upon the defendant to prove; and it has failed to prove them.
1-Ie (the motorneer) was as careless in his statements as he was in his actions in the criminal court, where he was being tried on a charge there growing out of this same accident; he testified that his car was some 90 feet from Calliope street when he first saw the horses of the truck; while on the trial of this case, he stated the distance to be 75 feet. And it is evident that he did not know where he was at that time, for he says:
“I imagine that that is the spot where I was when I first seen the truck. * * * That is why I say it was about in front of that church. * * * No, sir; I couldn’t say exactly where I was. There isn’t a man in the world that could say that, when he is about to meet with an accident of that kind; he couldn’t say the exact spot where he was to save his life, because you haven’t time to look out to find out where you are, when you see something coming out of a street. * * * I simply judged where *194 I was, but I couldn’t state positively. I couldn’t tell you exactly that I was right at that corner of the switch. I could not get up here to tell you to a foot of where I was. There is nobody on earth that can say that. I know very well I can’t.”
Again lie testifies:
“Well, I guess I could stop that car, at the speed I was going, in about 95 or 100 feet.”
The witness further says that with about 10 feet more space he would have succeeded in stopping the ear. It is quite evident that had he been paying attention, and had he seen the truck as it was emerging from Calliope street on to the avenue that he would have had ample time in which to have stopped the car.
The motorman was not careful; he did not see the truck when he ought to have seen it. He was disobeying the rules of the company a moment before the accident happened, as well as the state statute and a municipal ordinance; and he was running the car across a very busy street at a very high rate of speed.
The driver of the truck was careful, for the captain, who was seated beside him, looked up and down the avenue and saw the ear approaching, and recognized that there was ample time for the truck to get across the street if the motorman obeyed the rules of the company and the city ordinance on the subject.
Plaintiffs have asked for amendments of the judgment in each case, in the amounts awarded, and by being allowed interest. The judgments will be amended by allowing interest.
George H. Troyer was a man of family, 52 years of age at the time of his death, of good habits, enjoying good health, and earning a salary of $75 per month as tillerman. He was thrown from the fire truck while in the discharge of his duties, and was rendered unconscious. He- died within a few hours after the accident without having been restored to consciousness. By his death, his wife and children were deprived of the love and care of their natural protector and helper; and they are entitled to be restored to that same condition in so far as money can compensate them for their loss. They also suffered in anguish of spirit and feeling by his untimely death, and they are entitled to damages therefor. The jury’s award of $10,-000 to the widow and $1,000 to each of the minor children is approved.
Mr. Cahill, the driver of the truck, was 29 years of age at the time of the accident. He was thrown violently from his seat on the truck, and was rendered unconscious. He was confined in a hospital and at home for several months, but by skillful treatment he has been restored to health. The judgment for $3,000 in his favor will not be disturbed.
It is therefore ordered, adjudged, and decreed that the judgments appealed from be amended by allowing interest from the date of said judgments; and, as thus amended, they are affirmed.