[L. A. No. 3863.    Department One.—October 9, 1917.]

BRADLEY W. KING, Respondent, v. SAN DIEGO ELECTRIC RAILWAY COMPANY (a Corporation), Appellant.

NEGLIGENCE—VIOLATION OF ORDINANCE—RIGHT TO INVOKE.—Where, in an action for personal injuries based on negligence, the plaintiff relies upon the violation of a statute or ordinance, he must be within the class intended by the legislative body to be benefited by the enactment.

ID.—INJURY TO BYSTANDER ON CITY STREET—RUNNING OF FIRE AUTOMOBILE ON SIDEWALK—AVOIDANCE OF COLLISION WITH STREET-CAR—RIGHT TO INVOKE ORDINANCE AGAINST CAR COMPANY.—In an action against a street railroad corporation for damages for personal injuries received by a person standing on the sidewalk of a city street from being struck by a fire automobile which was proceeding to a fire and which was forced to run upon the sidewalk to avoid a collision with a passing street-car, the plaintiff has the right to invoke, rely upon, and have admitted in evidence an ordinance of the city providing that all moving apparatus of the fire department shall have the paramount right of way through all streets when going to a fire, and that all street-cars in the vicinity of such apparatus going to a fire shall retard or accelerate their speed as occasion may require, in order to give the fire department the unobstructed use of the street, since the ordinance was intended for the protection of the public, as well as to insure the right of way to fires.

ID.—NEGLIGENCE OF MOTORMAN.—Where the motorman of an electric street-car knows or should know that a fire automobile is approaching at a great speed and runs his car out on a crossing suddenly, forcing the automobile to swerve to the sidewalk, and thereby injures a person, the company is negligent regardless of whether it is violating an ordinance or not.

ID.—CONCURRING NEGLIGENCE—JOINT AND SEVERAL LIABILITY.—One who is injured by the concurring negligence of two persons can sue either or both, and it is no defense that the particular person sued was not himself the sole tort-feasor.

APPEAL from a judgment of the Superior Court of San Diego County.   W. A. Sloane, Judge.

The facts are stated in the opinion of the court.

Eugene Daney, Read G. Dilworth, and E. Swift Torrance, for Appellant.

Crouch & Harris, Claude L. Chambers, and Ray M. Harris, for Respondent.

LAWLOR, J.—This is an action for damages arising out of personal injuries to plaintiff alleged to have been caused by the negligence of defendant.   The court, sitting without a jury, gave judgment for plaintiff for six thousand dollars. Defendant appeals.   The facts sufficiently appear in the following findings of the trial court:

"That on the sixteenth day of January, 1912, the plaintiff was upon the sidewalk at the southwest corner of Fifth and G Streets, in the city of San Diego, California, and was in the exercise of due and proper care for his own safety; that at said time there was a fire near the said place, to wit, a block west and about one-half a block south from said corner on the west side of Fourth Street between G and H Streets; that said fire was pouring forth a large quantity of black smoke; that the fire department of said city was racing westward on said G Street near its intersection with said Fifth Street in order to reach said fire as soon as possible; that at said time the defendant, by and through its servants and employees, was running one of its street-cars southerly upon said Fifth Street between F Street and G Street in said city.

"That the defendant carelessly and negligently and without due or proper care or regard for plaintiff's safety ran its said street-car suddenly across the intersection of Fifth and G Streets and directly in the way of an automobile which was part of said fire department, and which said automobile was then approaching the said intersection from the east on the said G Street; that said automobile was being driven at a rapid rate of speed by the Chief of said Fire Department.

"That all of said facts heretofore found were known by the defendant, or could have been known had it been in the exercise of due or proper care in the plaintiff's behalf.

"That part of said fire department, to wit, the assistant chief, driving his horse and buggy and ringing his fire bell had already just passed said corner in plain view of defendant's servants in charge of said street-car; and the fire chief, as he approached said corner in his automobile, continually blew a large whistle; and that said bell and whistle so sounded by said assistant fire chief and fire chief could easily have been heard by defendant's servants in charge of said car had they exercised ordinary care for the safety of the plaintiff; that a considerable part of the fire department of said city was also racing to said fire, and were also clanging their fire bells.

"That when said street-car was run upon said intersection of said street and directly in front of said automobile of said fire chief, it became necessary for said fire chief, in order to avoid a collision with said street-car, to steer and swerve his said automobile around in front of and past the said street-car, and the said fire chief did so steer and swerve his said automobile around in front of said street-car, and in so doing unavoidably ran his said automobile upon the sidewalk where the plaintiff was standing and struck the plaintiff with great force and violence, crushing him to and upon the ground there and inflicting upon him great and grievous bodily injury as follows, to wit: His left leg was so crushed, bruised, contused, and wounded that it became and was necessary to amputate same above the knee and the same was thereupon amputated above the knee. . . .

"The court finds that the injuries which the plaintiff received, as hereinbefore found, were not the direct and proximate result of the negligence of the plaintiff; that the plaintiff, at the time of the accident which resulted in his injury, was standing upon the northerly edge or curb line of the sidewalk upon the south side of the said G Street at or about the place where it intersects with the westerly boundary of said Fifth Street with portions of his body, sufficient to be struck by said automobile extending slightly northerly of said curb line and was leaning out slightly into that portion of said G Street set apart for the use of vehicles, and that while so standing, plaintiff was then looking westerly down said G Street away from the direction in which said automobile was approaching; that the plaintiff did not know that said automobile and said street-car, or either of them,

were approaching or that they were approaching each other, or that said fire chief was going to endeavor to pass in front of said car, and did not know that he was in great, or any, danger of injury to his person in standing where he was and in the exercise of ordinary care and diligence for his own safety should not have known; and it was not the portion of the plaintiff's body which was extending northerly over said curb line and into said street which was struck by said automobile of the fire chief, and that the injuries which the plaintiff received, as hereinbefore found, were not the direct or proximate result of the negligence of the plaintiff.

"That by reason of the personal injuries, hereinbefore found, plaintiff has been damaged in the sum of six thousand dollars ($6,000)."

The amended complaint, upon which issue was joined, merely set out the facts showing negligence, but by subsequent amendment the following paragraph was added:

"That on the twenty-first day of August, 1888, the legislative department of the city of San Diego duly passed and adopted an ordinance entitled, 'Ordinance No. 276. An Ordinance providing for Blockading the Streets and Alleys and the Preservation of Fire Department Property During Fires,' which said ordinance was thereafter duly approved by the mayor of said city, and published according to law, and at the time of the committing of the grievances herein mentioned had never been repealed, and was in full force and effect, a portion of which said ordinance is as follows, to wit:

" 'Section II.   All steam engines and other moving apparatus of the Fire Department shall have paramount right of way through all streets, lanes, alleys, courts and other places in the City of San Diego, when going to a fire, and such engines and other apparatus, and vehicles belonging thereto, shall take and keep to the right side of the street, unless the same be obstructed, and all street cars in the vicinity of any such Fire Engine, or other apparatus or vehicles going to a fire, shall retard or accelerate their speed, as occasion may require, in order to give to the Fire Department the unobstructed use of the street for the time being.' "

Section III of this ordinance provided that "any person or persons having control of any vehicle or street-car who *willfully* or *carelessly* permits the same to obstruct the progress

of any engine or apparatus of the Fire Department going to a fire . . . shall be guilty of a misdemeanor. . . . ''

It is appellant's contention, argued at great length, that respondent's cause of action is based entirely upon the ordinance above mentioned, and that conceding a violation of the ordinance by appellant, still there was no violation of any duty owing to respondent, since the purpose of the ordinance was to insure a right of way to the fire department while going to a fire and not to prevent injury such as was suffered by respondent. In other words, appellant's view is that respondent is not one of the class intended to be benefited by the ordinance and cannot therefore take advantage of its violation. Upon this ground appellant objected to the introduction of the ordinance and now assigns its admission in evidence as error. We think the ruling of the trial court was proper. We agree with appellant that one who relies upon the violation of a statute or ordinance must be within the class intended by the legislative body to be benefited by the enactment. (29 Cyc. 438.) We do not, however, concede that the application of this rule affects the respondent in this case. No doubt the primary object of those portions of the ordinance above quoted was to insure to the fire department the right of way for its vehicles while going to a fire. But that was not the only purpose contemplated. Suppose the chief had actually collided with the street-car and had sued appellant for resulting injuries. Could he have relied upon the ordinance? Unquestionably he could, and such has been the ruling wherever an enactment of this kind has been invoked by a member of the fire department. (*Buys* v. *Third Ave. R. Co.*, 45 App. Div. 11, [61 N. Y. Supp. 113] ; *Geary* v. *Metropolitan St. Ry. Co.*, 73 App. Div. 441, [77 N. Y. Supp. 54] ; *Geary* v. *Metropolitan St. Ry. Co.*, 84 App. Div. 514, [82 N. Y. Supp. 1016] ; affirmed, 177 N. Y. 535, [69 N. E. 1123] ; *City of New York* v. *Metropolitan St. Ry. Co.*, 90 App. Div. 66, [85 N. Y. Supp. 693], affirmed, 182 N. Y. 536, [75 N. E. 1128] ; *Duffghe* v. *Metropolitan St. Ry. Co.*, 109 App. Div. 603, [96 N. Y. Supp. 324] ; *McBride* v. *Des Moines City Ry. Co.*, 134 Iowa, 398, [109 N. W. 618] ; *Boylan* v. *New Orleans Ry. etc. Co.*, 139 La. 185, [71 South. 360] ; *Indianapolis Traction etc. Co.* v. *Hensley* (Ind.), 115 N. E. 934.) Suppose, further, that in this collision between the chief and the street-car, a bystander also was injured. Should we say that the

chief can invoke the ordinance but the bystander cannot, although both were injured in the collision which resulted from the violation of the ordinance? We think not. We think the legislative body intended not only to enable the fire department to reach a fire speedily and unhampered, but also to prevent collisions with other vehicles and consequent injury to firemen and bystanders. There is nothing in the ordinance itself to negative such an intent, and the very close relation between an obstructed right of way and a collision shows that an accident like the one here involved was in the contemplation of the city council when it framed the ordinance. In other words, both the members of the fire department and the individual members of the public are within the class intended to be protected by this provision.

It is not contended that the motorman in charge of defendant's car "willfully" permitted it to obstruct the progress of the chief's automobile. The question is therefore whether the motorman "carelessly" permitted such obstruction. This is denied by appellant, and its determination requires a review of the evidence.

A cursory reading of the testimony given by the thirty-five or more witnesses examined at the trial would seem to reveal a remarkable conflict in the evidence, particularly as to the relative positions of the street-car, the assistant chief, and the chief. But a closer scrutiny will show that the statements of the bystanders are not positive statements; they are merely the best recollection of matters observed at a time of more or less excitement, when several things were happening simultaneously, some of them at opposite points of the compass, with the natural result that no one of the witnesses can be relied upon for an accurate account of all the details. A careful study of the testimony establishes the following sequence of events at the intersection of Fifth and G Streets, where the accident occurred: First, the general city fire-alarm, heard by practically all the witnesses; second, the crossing of the street intersection by the assistant chief in his red buggy, drawn by a white horse, traveling about twenty or twenty-five miles an hour and ringing his large bell; third, the approach of the chief in his red automobile at a speed of twenty-five to thirty miles an hour, coming west on G Street toward Fifth, sounding his whistle, and the simultaneous approach of

the street-car at its usual speed of seven to eight miles an hour, coming south on Fifth toward G Street.

Plaintiff's theory for holding that defendant was negligent is that the motorman of the street-car in question heard or should have heard the general fire-alarm; that in the exercise of ordinary care he would have seen and heard the assistant chief as the latter passed by on G Street within at least fifty feet of the car, and he would have seen the people congregating around the corners of Fifth and G Streets and heard the approach of the chief and the fire apparatus following him, all of which would have indicated to a careful motorman that there was a fire in the vicinity and that a proper regard for the safety of passengers and bystanders required him to stop, before venturing upon the intersection, to investigate the chances of a collision with some of the apparatus coming down the street. This is in substantial accord with the findings, but appellant contends that they are not supported by the evidence. A careful review of the testimony convinces us, however, that there was sufficient showing made at the trial to sustain the findings.

The record shows that a number of people on both sides heard the fire-alarm and fire bells some time before the chief reached the intersection. Some of the witnesses were on the various corners of Fifth and G Streets; others were in their offices on the second and third floors of the city hall, some fifty or sixty feet from the intersection; defendant's witness Demers was on Fifth Street about twenty-five feet north of G Street, and defendant's witness Reese was on Fifth Street one hundred feet south of G Street. None of these had any difficulty in hearing the fire signals. Other witnesses testified that they saw the smoke rolling up from Fourth and G Streets to a height of twenty-five or thirty feet, and according to the witness Tellison and others it was an "awful black smoke," which was to be expected, considering that it came from burning tar oil. The plaintiff's witness Salmons stated that he was driving an automobile south on Fifth Street between F and G, when he first became aware of a fire in the vicinity, either by reason of the fire whistle or the people, some of whom he saw going down the street and others looking out of the city hall windows. He turned at G Street and drew up at the curb to get out of the way of fire vehicles which he knew were to be expected. He saw the assistant chief go by, and

he heard the bell on the latter's buggy. He saw the chief about two hundred feet back of the assistant chief, and saw the street-car shoot out on the crossing just as the chief got there. The general condition at the intersection was, he declared, such "as is usual around a busy corner at the time of a fire." It will be noted that the motorman was coming from the same direction and had the same opportunities of observation as this witness. One Hooker, who was driving a horse and buggy on G Street at the time, testified that there was considerable noise and ringing of fire bells, and that he was particularly concerned with the gong on the chief's machine which he was seeking to avoid. Many witnesses saw the assistant chief approach and cross Fifth Street and heard the "peculiar gong which he had on the front of his vehicle." The witness Hay stated that the street-car was about fifty feet north of the crossing when the assistant chief passed. Another witness said the street-car had traveled less than thirty feet from the time it slowed up to let the assistant chief go by to the time when the chief passed. He saw the motorman put on the brakes when the assistant chief approached and release them when the latter passed. The assistant chief himself remembered distinctly that he saw the car and motorman, who was looking out at the time, and that the car was only twenty-five or twenty-six feet away from him at the crossing. There is also ample testimony to the effect that the chief followed the assistant at a distance of about one hundred and fifty to two hundred feet, and that the chief was traveling about twenty-five to thirty miles an hour, while the speed of the street-car was about seven to eight miles an hour. These relative speeds and distances show that the motorman was not over fifty feet from the intersection of Fifth and G Streets when the assistant chief passed in plain view of the car, and that the motorman was therefore in a position to see and hear the various things indicating a fire and that fire vehicles were to be expected at the intersection. The motorman testified that he did not see the assistant chief at the crossing, nor did he observe any evidences of the fire. He stated that he had slackened the speed of his car to allow two buggies drawn by dark horses racing abreast on G Street to pass the intersection. But every witness on both sides who was asked the question, including the conductor of the car, testified that he did not see the vehicles described by the

motorman. Furthermore, there was evidence tending to show that as he approached the intersection the motorman was not looking straight ahead, as he should, but was gazing off to the side in the direction of the fire. The witness Freeman, in particular, stated on both direct and cross-examination that he watched the motorman coming down Fifth Street from the time the latter was within one hundred and twenty-five feet of the intersection, and that during all that interval the motorman was looking out under the eaves of his car, as if trying to see the smoke, and was not paying attention to anything ahead. The witness sought to warn the motorman by waving and whistling to him, but the motorman continued to look away until almost at the intersection, when he saw the chief and pressed down his brakes hard and slid across the street about seventy-five or eighty feet, stopping on the south side. The motorman denied that he was looking out under the eaves of his car, but the testimony of Freeman, taken together with the motorman's ignorance of all that was going on in front of him, was evidently sufficient to convince the trial court that the motorman was negligent, and that such negligence was the proximate cause of the injury to plaintiff. We cannot say that there is not sufficient evidence to support such finding.

The facts thus found by the court are sufficient to show not only that the motorman carelessly permitted the street-car to obstruct the progress of the chief's automobile, which constituted a violation of the ordinance and negligence *per se*, but also that there was ample showing of negligence without resort to the ordinance. Appellant makes the point that the court would not have found negligence if the ordinance had not been introduced. As we have decided that the ordinance was properly in evidence and that its violation could be relied upon by respondent as negligence *per se*, it is immaterial whether or not there was a cause of action without the ordinance. However, the specific facts found were independent of the violation of the ordinance and would in themselves sustain the finding of negligence.

We are not called upon at this time to decide whether or not the chief of the fire department was himself negligent in exceeding the speed limit set by the city ordinance. It needs no citation of authority for the point that one who is injured by the concurring negligence of two persons can sue either

or both, and it is no defense that the particular person sued was not himself the sole tort-feasor.

Appellant also insists that the lower court should have found the plaintiff guilty of contributory negligence. We have examined the evidence upon this point and cannot say that the finding that the plaintiff was in the exercise of due care is not sustained.

Judgment affirmed.

Shaw, J., and Sloss, J., concurred.