[Civ. No. 12690.   Second Dist., Div. One.   Jan. 2, 1942.]

W. A. CRISWELL, Appellant, v. PACIFIC ELECTRIC RAILWAY COMPANY (a Corporation) et al., Respondents.

Conroy & Conroy, Edward L. Conroy and Gwyn S. Redwine for Appellant.

Frank Karr, C. W. Cornell and O. O. Collins for Respondents.

DRAPEAU, J. pro tem.—This is an action for damages for alleged negligence which caused a collision between an automobile and an electric street car at an intersection of two streets in Hollywood. At the time of the collision, it was late afternoon but still daylight; it had been raining and the tracks were wet, but the weather was then clear. Traffic was very heavy.

The plaintiff was driving south on Argyle Avenue to where it meets Hollywood Boulevard. He made the boulevard stop, and started across Hollywood Boulevard, in the center of which there is a two-track electric railway line, belonging to the defendant, Pacific Electric Railway Company.

By reason of traffic conditions, the plaintiff went slowly across the intersection, and either came to a stop or was proceeding very slowly across the defendant's car tracks, when his automobile was struck by a street car traveling easterly on Hollywood Boulevard and belonging to the defendant street car company and operated by a motorman, also a defendant.

Among other things, there is conflict in the testimony as to the speed, respectively, of the automobile and the street car; as to when the brakes were applied on the street car; and as to whether the plaintiff and the motorman looked for and observed approaching traffic, as it was their duty so to do.

After argument, and the reading of the court's instructions, the issues were submitted to a jury, which returned a verdict in favor of the defendants.

Plaintiff concedes that there is sufficient substantial evidence in the record to sustain the verdict, but argues that the evidence upon the issues of negligence was very evenly balanced, and that alleged errors as to instructions given by

the trial court could well have been the means of influencing the jury's conclusions on these issues.

The instructions complained of will be considered under two heads: First, what we may denominate the "look and listen" instruction; and, second, instructions as to speed at the intersection.

The "look and listen" instruction is as follows:

"You are instructed that the motorman, if exercising ordinary care in operating the street car in this case, had a right to presume that any person approaching the intersection would perform the duty which the law imposed upon him to look and listen for the possible approach of cars and no duty rested upon the motorman to slow down or stop his car until he had reason to believe that the plaintiff approaching the intersection was not performing or likely to perform his duty in that respect, when the motorman saw or in the exercise of ordinary care concluded that the plaintiff would attempt to cross in front of his car, if the motorman then used ordinary care to stop his car, that was all that was required of him in that respect."

The speed at intersection instructions are:

1. "You are instructed that under the provisions of Section 80.43 of the Municipal Code of the City of Los Angeles that the speed limit at which the operator of a street car might cross the intersection of Argyle Avenue and Hollywood Boulevard is twenty (20) miles per hour."

2. "You are instructed that it was not a violation of the Municipal Code of the City of Los Angeles for the operator of the street car to enter and cross Argyle Avenue at a speed of twenty (20) miles per hour or less."

3. "You are instructed that Section 80.43 of the Los Angeles Municipal Code—Ordinance No. 77,000, as amended, provides as follows:

'Street Car Speed.

'(a) The operator of any street car shall not drive said street car at a speed exceeding the following:

'*1. Fifteen (15) miles per hour when traversing another street car crossing or a highway crossing or when turning upon curves, in either event when the operator does not have an unobstructed view along such intersecting rails or highway or around such curve within a distance of two hundred (200) feet; also when passing schools while persons are entering or leaving the grounds thereof.*

'2. Twenty (20) miles per hour in business districts.

'*3. Twenty-five (25) miles per hour in residence districts.*

'*4. Forty-five (45) miles per hour in all other places.*

'*(b) The provisions of this section shall not apply when a street car is being operated upon a private right of way which is effectively protected from vehicular traffic.*' ''

The italicized portion of this instruction was deleted by the trial court.

4. The following instruction was proposed by the plaintiff but was refused:

''You are instructed that the intersection of Hollywood Boulevard and Argyle Avenue is a highway crossing within the meaning of Section 80.43 of the Municipal Code of the City of Los Angeles, and that the operation of a street car traversing said intersection at a speed in excess of 15 miles per hour would constitute a violation of said Code.''

Standing alone in the record, we would not be disposed to send the case back for a new trial because of the giving of the ''look and listen'' instruction. We do not think the instruction was proper, because it added unnecessarily to the plaintiff's burden of proof. But the jury was elsewhere given instructions which correctly set forth the rule governing operators of vehicles in cases of this kind. These instructions apparently were based upon the recent case of *Wright* v. *Los Angeles Railway Corp.*, 14 Cal. (2d) 168 [93 Pac. (2d) 135], in which the Supreme Court says:

''However, it is generally conceded that, on approaching an intersecting street, the duties of a streetcar motorman and those of the driver of an automobile which is about to cross the streetcar tracks at such intersection, are reciprocal and that each is required to approach the intersection with due regard for the rights of the other. (*Smith* v. *Southern Pac. Co.*, 201 Cal. 57 [255 Pac. 500]; *Shipley* v. *San Diego Elec. Ry. Co.*, 106 Cal. App. 659 [289 Pac. 662].) In that regard it was said in the case entitled *Aungst* v. *Central California Traction Co.*, 115 Cal. App. 113, 116 [1 Pac. (2d) 56]: . . . 'that where both street car companies and automobiles have the right to use the public street, the right of each must be exercised with due regard to the rights of the other, and in such a manner as not unreasonably to infringe upon the rights of the other.' 'While street cars must run upon the tracks provided for them, they have no absolute or pre-

eminent *right of way over intersections,* but must use the same with due regard to the safety and rights of the general public.' (*O'Connor* v. *United Railroads,* 168 Cal. 43 [141 Pac. 809].)''

The vice of the instruction is that it does not take into account all traffic conditions present at the time of the collision, but assumes to limit the duty of the motorman to drive his street car as though it and the plaintiff's automobile were the only vehicles on the street at the time. The first part of this instruction is not a ''stop, look and listen'' instruction, but is simply a ''look and listen'' instruction. In the late case of *Hopkins* v. *Pacific Elec. Ry. Co.,* *(Cal. App.) [118 Pac. (2d) 872], the District Court of Appeal, Fourth District, after citing and discussing many authorities, in this connection says: ''. . . there is no absolute duty imposed on a motorist or pedestrian to stop, as well as to look and listen, before proceeding onto the tracks of a railway company situated at a crossing of a city street in a closely built-up district; that under such circumstances the question of a plaintiff's negligence in failing to so stop generally is one of fact for a jury and not one of law for the court.''

Therefore, reading the instructions as a whole, despite the giving of this instruction complained of, we would not be inclined to disturb the judgment of the lower court. (*Portman* v. *Keegan,* 31 Cal. App. (2d) 30 [87 Pac. (2d) 400]; *De Fries* v. *Market Street Ry. Co.,* 31 Cal. App. (2d) 463 [88 Pac. (2d) 256].)

But when we come to a consideration of the instructions which told the jury that at the intersection here in question the speed limit of the street car was 20 miles an hour, whereas, in fact it was 15 miles an hour, we have a different situation. After giving due consideration to the effect of section 4½ of article VI of the Constitution on this case, we think there was error in thus instructing the jury, and that this error was of sufficient gravity to require a reversal of the judgment of the lower court.

A review of the record, and a reading of the city ordinance, of which Instruction 3 was a copy, indicates that it was the duty of the motorman of the street car to travel at a speed not exceeding 15 miles an hour crossing this intersection. If the jury had known that this was the law, their ver-

---

*Reporter's note: A rehearing was granted in *Hopkins* v. *Pacific Elec. Ry. Co.,* on December 1, 1941.

dict on a close and evenly balanced conflict in testimony may well have been in favor of the plaintiff.

"The term 'public highways' includes streets in cities." (*Western Union Telegraph Co.* v. *Hopkins,* 160 Cal. 106, 118 [116 Pac. (2d) 557]; *B. & H. Transportation Co.* v. *Johnson,* 122 Cal. App. 451 [10 Pac. (2d) 506].)

Respondents suggest that there is nothing in the record which would indicate that the motorman could not see up Argyle Avenue for the distance required by the ordinance, and, therefore, the 20-mile clause in the ordinance was in effect. A complete answer to this contention is to be found in the map introduced in evidence, which shows a business structure upon the northwest corner of Argyle Avenue and Hollywood Boulevard, which obstructed the motorman's view in that direction, and which made the 15-mile provision in the ordinance applicable to conditions as they existed at the intersection at the time of the collision.

The judgment is reversed.

York, P. J., and Doran, J., concurred.

A petition for a rehearing was denied January 28, 1942, and respondents' petition for a hearing by the Supreme Court was denied March 2, 1942.